BOOTH, Chief Judge,
dissenting:
I respectfully dissent from the affirmance of the order of December 27, 1984, denying appellant’s application to construct a freestanding, short-term, psychiatric and substance abuse hospital in Bradenton (District VI). The hearing officer found clear evidence of need for the proposed facility but apparently felt compelled to deny the certification because of an HRS policy that surplus beds in Sarasota (District VIII) precluded the application being granted.
The Department adopts the hearing officer’s recommendation but rejects the hearing officer’s findings of facts on the “tangible impact” in District VIII caused by the influx of District VI patients into District VIII facilities. This was error, as was the Department’s action in undertaking to substitute its own findings. The error is not “harmless”; it is pervasive. The Department ignores the related findings immediately following the rejected findings. These findings of the hearing officer, with those rejected indicated in bold type, are as follows:
... These Sarasota based beds, admittedly in a different District, are nonetheless at least partially available to patients from Bradenton, Manatee County, and southern Hillsborough County within 45 minutes normal driving time. However, the beds in Sarasota (District VIII) were predicated upon the population in that District which does not include the Manatee and southern Hillsborough County patients. Consequently, a tangible impact on these District VIII facilities can be expected from an influx of District VI patients and it is not reasonable to expect the current surplus to be available in the 1989 time-frame since the District VIII population, is itself in a state of rapid growth.
There are many valid reasons why health care professionals feel that hospitalization within the community, especially in the area of psychiatric and substance abuse treatment, is imperative. As to adolescents, this discipline requires the involvement of the whole family. Repeated lengthy drives on an every-two-day basis, even to Sarasota, especially during the high traffic volume winter months, is disruptive to the course of treatment. The inconvenience of the long trip quite often lessens an already minimal desire for involvement on the part of the family and without family involvement, the potential for recurrence *765 of the illness is higher. In the case of geriatric patients, the problem is similar. Family involvement is of great importance and here, with older spouses, the difficulty of long distance travel in relatively unfamiliar areas heightens the risk and increases the stress on both the patient and the family. Family involvement plays an integral part in the treatment of addictive diseases as well. In fact, in the opinion of one expert in the field, the recovery rate for alcoholic patients is 20% higher when the family is involved. In light of the above, there can be little question that the availability of easy access to local treatment is of major importance, [emphasis added; bold type indicates findings disapproved by HRS]
One would believe that the above-quoted findings, together with a finding of lack of facilities in District VI, would lead to a recommended order granting the certificates; not so. The hearing officer’s conclusion is inconsistent with his findings.
The Department erred in partially rejecting findings of fact, leaving standing related findings, and in failing to address the issues raised by those findings as to availability, adequacy and access, even if Sarasota beds are considered. The danger of allowing departure from the statutory standard is apparent. It is one thing to allow “consideration” of facilities in adjacent districts; it is another to judge need in the subject district on that basis. The statute does not preclude the former but does the latter.
In requiring consideration of surplus beds outside the community and outside the “service district,” the Department fails to follow the legislative intent of Section 381.493, Florida Statutes, et seq., known as the “Health Facilities and Health Services Planning Act,” and its community-oriented health goals. Specifically, the basic requirements of Section 381.494(6)(c) are that “availability,” “accessibility,” and “adequacy” of existing health care services “in the service district of the applicant” be determined. The “service district of the applicant” is the basis for determination of need. That is the plain language of the statute.
The hearing officer found (1) that services in District VI were inadequate in the immediate community, and (2) that surplus beds in the Tampa area were not reasonably accessible. The order further finds that beds in Sarasota were “partially available.” Finally, the hearing officer concludes as follows:
Respondent, in almost all its rulings and pronouncements in this area, refers to service district as an operations subdivision and creates what approximates an aura of sanctity about this distinction. ... Bed need methodology is based on district population and almost every decision is made on the basis of circumstances existing in a certain district. Yet in this instance, DHRS contends that beds from a different district may be considered in determining a need for beds in the subject district. This, then, raises the question of whether, in fact, adjacent districts can be considered in this light. The answer is in the affirmative and precedent for this is set even in the statutory criteria utilized in analyses of this nature. For example, criteria 11, which happened not to be pertinent in this hearing, nonetheless refers to needs of entities which provide services to individuals, “not residing in the service district in which the entities are located or in adjacent service districts. ” (Emphasis [theirs].)
The hearing officer’s reasoning is specious. The subsection referred to[1] does not, by implication or otherwise, allow con *766 sideration of possible available beds in another district as a basis for denial. The legislature could have provided a statutory criterion based on over-bedding in adjacent service districts but did not see fit to do so. The reasoning of the Department is equally fallacious and contradictory.[2]
We should vacate the order below and remand for reconsideration in accordance with the requirements of Section 381.-494(6), Florida Statutes.

. Section 381.494(6)(c)ll, Florida Statutes, provides:
The needs and circumstances of those entities which provide a substantial portion of their services or resources, or both, to individuals not residing in the service district in which the entities are located or in adjacent service districts. Such entities may include medical and other health professions, schools, multidisciplinary clinics, and specialty services such as open-heart surgery, radiation therapy, and renal transplantation.

. Final order of the Department, in pertinent part:
... Although the beds were predicated upon the population of District VIII, which does not include Manatee and Southern Hillsborough County, they were also determined upon an awareness of use of the facilities in District VIII by residents of Manatee and Southern Hillsborough County as evidenced by Rule 10-5(25)(c)_ Use by nonresidents which burdens existing facilities will cause their utilization rate to be high. An application may be granted under these circumstances, even though there is no need shown under 10-5(25)(d) by a showing that other services are unavailable because they are overcrowded....
District VIII will not experience greater occupancy rates because of this Order. Patients seeking services are not bound by artificial boundaries. The drafters of the pertinent rules recognize this fact and the. rule makes provision for the issuance of Certificates of Need when high utilization rates indicate a need outside of the bed need methodology based on district population.